AO 91 (Rev. 11/11) Criminal Complaint

AUSA Kurt Siegal (312) 886-1265
AUSA Minje Shin (312) 469-6024

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JAMES HOWARD and
SHANTEL ROBINSON
also known as "Shantel Cheeks"

CASE NUMBER: 1:25-cr-00313

**FILED**
6/13/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning no later than on or about June 5, 2025, and continuing until at least on or about June 12, 2025, at Oak Lawn, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4 piperidinyl] propanamide), a Schedule II Controlled Substance, and 500 grams or more of a mixture and substance containing a detectable amount cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

RYAN PARKER      Digitally signed by RYAN PARKER
                 Date: 2025.06.13 07:02:29 -05'00'

_____
RYAN PARKER
Special Agent, Drug Enforcement Administration
(DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 13, 2025

_____
Judge's signature

City and state: Chicago, Illinois

GABRIEL A. FUENTES, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, RYAN PARKER, being duly sworn, state as follows:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for 7 years.  My current responsibilities include the investigation of narcotics trafficking offenses.

2.      This affidavit is submitted in support of a criminal complaint alleging that JAMES HOWARD and SHANTEL ROBINSON, also known as Shantel Cheeks, have violated Title 21, United States Code, Section 846.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging HOWARD and ROBINSON with conspiracy to possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, and 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents who have knowledge of the events and

circumstances described herein, law enforcement records, interviews of witnesses, my review of surveillance camera recordings, my training and experience, and the training and experience of other law enforcement agents.

## I. FACTS SUPPORTING PROBABLE CAUSE

4.     In summary, and as set forth in more detail below, Shantel ROBINSON leased an apartment in Oak Lawn (the "ROBINSON Apartment"). The property owner, Individual A, identified James HOWARD as ROBINSON's boyfriend. On June 6, 2025, law enforcement covertly recovered kilogram quantities of narcotics from a comforter blanket package that HOWARD had left in the common area the night before. Later that day, after HOWARD and ROBINSON brought the comforter blanket package back into the ROBINSON Apartment—which was now missing the kilograms of narcotics—ROBINSON called Individual A about missing a blanket.

5.     Days later, HOWARD and ROBINSON discovered a covert camera outside the ROBINSON Apartment that DEA had installed.  Early the next morning, law enforcement searched the ROBINSON Apartment pursuant to a search warrant. Inside, they found evidence that the apartment was being used as a drug laboratory.

6.     Less than 90 minutes after HOWARD and ROBINSON discovered the covert camera, someone using ROBINSON's access code entered a storage facility in which ROBINSON maintained a self-storage unit.  On June 12, 2025, law enforcement searched ROBINSON's self-storage unit pursuant to a search warrant, and recovered multiple kilograms of suspected narcotics and several firearms.  They then searched, pursuant to a search warrant, HOWARD's residence in Frankfort,

Illinois. There, law enforcement discovered numerous firearms, bulk quantities of U.S. Currency, drug manufacturing paraphernalia, and what appeared to be the covert camera installed at the ROBINSON Apartment, and arrested HOWARD and ROBINSON.

7. In the course of the investigation, investigators seized at least approximately 7 kilograms of suspected fentanyl, at least approximately 850 grams of suspected cocaine, approximately 25 firearms, and other contraband attributable to HOWARD and ROBINSON.

### A. Background

8. On or about January 16, 2025, law enforcement observed Individual C exit a multi-unit residential property located on the 9500 block of Ridgeland Avenue in Oak Lawn, Illinois (the "Ridgeland Avenue Building"), while carrying at least one duffle bag. They then watched Individual C put that duffle bag into the back seat of a rental car and drive away. Shortly afterwards, agents stopped Individual C and recovered multiple kilograms of narcotics from duffle bags in the back seat of Individual C's rental car. Law enforcement also seized multiple cell phones from the center console of Individual C's rental car.

9. On or about January 27, 2025, law enforcement obtained search warrants for the cell phones seized from Individual C's rental car. *See* 25 M 52; 25 M 53; 25 M 54. Within one of these phones, law enforcement found a video recording, dated on or about October 7, 2024, that depicted a black male with long dreadlocks standing at a kitchen counter, cleaning a blender cup that appeared to be coated in a

3

powdered residue (the "HOWARD Video"). The HOWARD Video also appeared to show the following items on the kitchen counter: a plastic bag that contained an off-white substance; a digital scale coated in powdered residue; and a plastic container labeled "creatine." A screenshot from the HOWARD Video appears below.



10.     In the HOWARD Video, the man wore a face mask that did not cover his face and, on at least one occasion, appeared to nod off. At one point, the person recording the HOWARD Video appeared to tell the man, "Mac, I want you to see this. You always say why somebody do this and that. That and this. I want you to see it."[1]

_____

[1] The language quoted is from a preliminary review of the Howard Video, not a final transcript.

11.     Based on a comparison with the Illinois driver's license photograph for James D. HOWARD, I believe that HOWARD was the man depicted in the Howard Video. Further, based on my training and experience, I believe HOWARD is depicted manufacturing narcotics.

### B.     In April 2025, Individual A Identified SHANTEL ROBINSON as the Renter of the ROBINSON Apartment

12.     In April 2025, law enforcement met with Individual A, the property owner of the Ridgeland Avenue Building.  During this meeting, Individual A reported to law enforcement that an individual named Shantel Cheeks was renting Apartment 3W within the Ridgeland Avenue Building (the "ROBINSON Apartment").

13.     Individual A showed law enforcement a photograph of the driver's license for Shantel Cheeks. According to an Illinois Secretary of State database, the driver's license number that was assigned to Cheeks' driver's license had since been reassigned to SHANTEL ROBINSON, whose listed address was the ROBINSON Apartment. The driver's license photographs for Shantel Cheeks and SHANTEL ROBINSON are identical. Based on these facts, I believe that SHANTEL ROBINSON, also known as Shantel Cheeks, was the renter for the ROBINSON Apartment.

### C.     On June 2, 2025, Individual A Identified HOWARD as ROBINSON's Boyfriend, and the ROBINSON Apartment as the Venue for the HOWARD Video

14.     On or about June 2, 2025, law enforcement again met with Individual A.  During this meeting, law enforcement showed Individual A an unmarked driver's license photograph of JAMES HOWARD. Individual A identified the photograph of

HOWARD as depicting "Shantel's boyfriend," and after the meeting, Individual A sent law enforcement a text message indicating that "Shantel's boyfriend's" telephone number was (773) XXX-0860. According to records from T-Mobile, that phone number has been subscribed to JAMES HOWARD on the 9300 block of S. Aberdeen Street in Chicago since approximately November 28, 2020.

15. Law enforcement also showed Individual A a portion of the HOWARD Video. After Individual A viewed a portion of the video, he/she informed law enforcement that the HOWARD Video appeared to depict the interior of the ROBINSON Apartment.

16. During the meeting with law enforcement, Individual A provided both verbal and written consent for law enforcement to install and monitor CCTV / video cameras in the common areas of the Ridgeland Avenue Building. Individual A also provided law enforcement with a key to access the common area of the building.

**D. On the Morning of June 6, 2025, Law Enforcement Seized Kilograms of Narcotics from a Comforter Package that HOWARD Had Left in the Ridgeland Avenue Building's Common Spaces the Night Before**

17. On the afternoon of June 5, 2025, law enforcement installed two covert video cameras in the common areas of the Ridgeland Avenue Building. One camera was placed in a common area on the first floor; the other camera was placed in a common area on the third floor and was positioned to record the entrance and exit to the ROBINSON Apartment.[2] More specifically, upon walking up the stairs to the

---

[2] Due to a technical issue, the camera placed in the common area of the first floor did not begin recording until the morning of June 10, 2025.

third floor, visitors come to a landing; the door to one apartment is on the left and the door to the ROBINSON Apartment is on the right. Between the staircase and the apartment on the left—on the opposite side of the landing from the ROBINSON Apartment—is a narrow walkway in which law enforcement found miscellaneous items (e.g., a folding chair, two stepladders, two packaged comforter sets, and two vacuums) openly stored against the wall. Law enforcement placed the camera on the third floor inside of a flowerpot in that walkway. The flowerpot is depicted in the below photograph.



18.     According to law enforcement surveillance footage, at approximately 5:02 p.m. on June 5, 2025, a gray Dodge Durango parked in a garage at the Ridgeland Avenue Building.[3] Minutes later, surveillance footage from the covert camera

---

[3] According to records obtained from the Illinois Secretary of State, a gray 2024 Dodge Durango, bearing Illinois registration EZ31574, is registered to "J&M REAL ESTATE 1

captured HOWARD and ROBINSON enter the ROBINSON Apartment.[4]    And approximately 38 minutes later, Individual B entered the ROBINSON Apartment.

19.    At approximately 6:42 p.m. on June 5, 2025, surveillance footage from the covert camera captured HOWARD exit the ROBINSON Apartment and walk down the narrow walkway on the third floor's common area, past the covert camera. Moments later, the covert camera recorded HOWARD return to the ROBINSON Apartment while carrying a comforter package. Individual E arrived and walked into the ROBINSON Apartment with HOWARD.

20.    At approximately 2:50 a.m. on or about June 6, 2025, HOWARD exited the ROBINSON Apartment while carrying the comforter package and walked down the walkway, past the covert camera and out of view.   A screenshot from the surveillance footage is shown below.



LLC." According to records provided by BMO Harris, "James Howard" is the signer for the accounts for J&M Real Estate 1 LLC.

[4] Law enforcement identified ROBINSON from her driver's license photograph.

21.     Moments after walking past the covert camera, HOWARD returned to the ROBINSON Apartment without the comforter package.

22.     At approximately 2:51 a.m. on June 6, 2025, HOWARD, ROBINSON, and Individual B exited the ROBINSON Apartment. At the time, HOWARD was carrying a black plastic garbage bag and a knotted white plastic shopping bag. After exiting the ROBINSON Apartment, HOWARD walked down the walkway, past the camera, and out of view. Moments later, HOWARD returned to the camera's view still carrying the black plastic garbage bag but without the knotted white plastic shopping bag.

23.     Shortly after HOWARD returned into view of the covert camera, HOWARD, ROBINSON, and Individual B left the Ridgeland Avenue Building for the evening.

24.     At approximately 9:31 a.m. on June 6, 2025, law enforcement recovered a black plastic garbage bag from inside of a dumpster located near the east side of the Ridgeland Avenue Building. When law enforcement searched that black plastic bag, they recovered: (1) a receipt from a pizza restaurant in Evergreen Park, dated 12:05 a.m. on June 6, 2025, listing the ROBINSON Apartment, and the name Shantel Cheeks, on the receipt;[5] and (2) multiple items suspected to be drug manufacturing paraphernalia, including opened vacuum sealed bags, latex gloves, face masks, a box for a digital scale, and approximately two empty boxes of baking soda. Later that

---

[5] Surveillance footage from the covert camera showed that a pizza was delivered to the Ridgeland Avenue Apartment at approximately 12:49 a.m. on June 6, 2025.

morning, Individual A consented to law enforcement searching the comforter packages located in the common area on the third floor of the Ridgeland Avenue Building.

25.     At approximately 12:18 p.m., law enforcement searched the comforter packages located in the common area on the third floor of the Ridgeland Avenue Building.  Within the sheets in these packages, law enforcement found a knotted white plastic shopping bag, a black plastic shopping bag, and a plastic container labeled "Super Mannitol."[6]  Within the plastic container labeled Super Mannitol, law enforcement observed multiple knotted bags that contained an off-white powdered substance.  Law enforcement field tested the contents of one of the knotted bags, and the field test yielded a presumptively positive indication for fentanyl.  Law enforcement also observed a white powder-like substance in the black plastic shopping bag, which field tested positive for cocaine.  In total, law enforcement recovered approximately 1.5 kilograms of suspected fentanyl and approximately 850 grams of suspected cocaine from within the sheets. A photograph depicting the location of the comforter package that contained the suspected narcotics appears below.

---

[6] Based on my training and experience, super mannitol is a dietary supplemental, sometimes sold in a powdery form, that can be used as a cutting agent for narcotics.



26.     Law enforcement seized the suspected narcotics and returned the comforter packages—with the blankets inside—back to where they had been found.

**E.     On the Evening of June 6, 2025, HOWARD Checks the Comforter Packages and ROBINSON Reports to Individual A that She Was Missing a Blanket**

27.     On or about June 6, 2025, at approximately 7:29 p.m., surveillance footage showed a Dodge Durango arrive and park in a garage at the Ridgeland Avenue Building.     Minutes later, law enforcement's covert camera captured HOWARD and ROBINSON walk up the stairs to the third floor of the Ridgeland Avenue Building. After reaching the third floor, ROBINSON appeared to use a key to open the door to the ROBINSON Apartment; HOWARD instead immediately walked down the narrow walkway, past the covert camera, and returned to the landing carrying a comforter package. ROBINSON and HOWARD, who was still carrying the comforter package, then entered the ROBINSON Apartment.

28.     Minutes later, HOWARD exited the ROBINSON Apartment and again walked down the narrow walkway, past the covert camera, and out of view. Moments later, HOWARD returned to the ROBINSON Apartment while carrying the other comforter package.

29.     Minutes after bringing both comforter packages inside the ROBINSON Apartment, at approximately 7:41 p.m., HOWARD exited the apartment empty-handed. He then walked downstairs and, after approximately one minute, ran back up the stairs and re-entered the ROBINSON Apartment.

30.     Based on my training and experience, I believe ROBINSON reacted in this fashion because he discovered the narcotics were missing from the comforter packages.

31.     At approximately 7:44 p.m., Individual A reported to law enforcement that he/she had just received a phone call from ROBINSON in which ROBINSON had stated that she was looking for some blankets.  Later that night, at 9:03 p.m., Individual A also reported to law enforcement that ROBINSON had asked if Individual A had spoken with ROBINSON's neighbor to see if the neighbor had taken a blanket from ROBINSON. Based on my training and experience, I believe ROBINSON was trying to determine what had happened to the missing narcotics that had been stored in the comforter package.

**F.     On June 10, 2025, HOWARD and ROBINSON Discovered and Disconnected the Covert Camera**

32.     On June 10, 2025, at approximately 5:06 p.m., according to footage captured by the covert camera installed in the Ridgeland Avenue Building,

12

ROBINSON and HOWARD discovered the covert camera. More specifically, as ROBINSON was opening the door to the ROBINSON Apartment, HOWARD ascended the common stairwell. HOWARD appeared to notice the camera at the top of the staircase, and momentarily ducked out of the frame. A screenshot from the surveillance footage showing HOWARD discovering the covert camera appears below.



33.     After observing the covert camera, ROBINSON and HOWARD then approached the camera and appeared to examine or manipulate it for a short period of time. At approximately 5:09 p.m., HOWARD and ROBINSON then entered the ROBINSON Apartment using ROBINSON's keys. At approximately 5:11 p.m., HOWARD exited the ROBINSON Apartment, looked towards the camera, and the camera disconnected. As explained further below, law enforcement later seized a camera, similar in appearance, from HOWARD's residence on June 12, 2025.

### G. On June 11, 2025, Law Enforcement Searched the ROBINSON Apartment and Recovered Evidence of its Use as a Drug Lab

34.     On the morning of June 11, 2025, law enforcement executed a search warrant at the ROBINSON Apartment. *See* 25 M 363. Pursuant to that warrant, law enforcement recovered multiple clear plastic bags containing a powdery substance from a medicine cabinet.  Law enforcement later field tested the contents of one of the clear plastic bags, which yielded a presumptively positive indication for the presence of fentanyl.  In total, law enforcement recovered approximately 900 grams of this powdery substance from the medicine cabinet. Law enforcement also seized and/or located the following items, among other things, within the ROBINSON Apartment: a stolen handgun with a drum magazine; a rifle with a defaced serial number; gas masks; surgical-style face masks; multiple blenders covered in a powdery residue; vacuum seal packaging; two hydraulic jacks or "kilogram presses";[7] super mannitol; three empty Rolex watch boxes; and a cardboard box labelled "Narcan."[8]  Law enforcement also seized mail addressed to HOWARD (but not to the ROBINSON Apartment), and a W-2 statement for ROBINSON.

35.     While executing the search warrant at the ROBINSON Apartment, law enforcement also observed powdery residue covering multiple items and surfaces within the ROBINSON Apartment.  Based on footage obtained from the covert video

---

[7] Based on my training and experience, I know that these hydraulic jacks are commonly used by narcotics traffickers to compact powder-form narcotics into shaped objects.

[8] Based on my training and experience, I know that drug traffickers may keep Narcan in the event that they inadvertently overdose on narcotics when handling them for packaging or distribution.

cameras installed in the common areas of the Ridgeland Avenue Building on or about June 5, 2025, no individuals appear to have stayed overnight in the ROBINSON Apartment during the time the cameras were installed. Therefore, based on my training and experience, I believe that the ROBINSON Apartment was not used primarily as a residence; rather, it was used primarily to manufacture and package distribution quantities of controlled substances, including fentanyl.

36.     According to law enforcement who executed the warrant at the ROBINSON Apartment, many of the seized items described above were located in plain view for any occupant of the apartment to see.

**H.     On June 12, 2025, Law Enforcement Searched ROBINSON's Storage Unit in Alsip, Illinois, and Recovered Narcotics and Multiple Firearms**

37.     As set forth below, HOWARD and ROBINSON both had access to storage unit B308 (the "ROBINSON Storage Unit"), located at Business A, a self-storage facility located on the 4800 block of West 115th Street in Alsip, Illinois. According to records obtained from Business A, the ROBINSON Storage Unit is rented to "Shantel Cheeks." In addition, "james howard" is listed both as an "emergency/alternate contact" and an "Authorized Access Persons."

38.     According to surveillance footage provided by Business A, on or about June 7, 2025 and on or about June 9, 2025, ROBINSON was on the Business A premises.

39.     According to surveillance footage provided by Business A, on June 10, 2025, at approximately 6:29 p.m. (less than 90 minutes after HOWARD and

ROBINSON discovered the covert camera in the Ridgeland Avenue Apartment), a gray Dodge Durango pulled into Business A. According to records obtained from Business A, at approximately 6:29 p.m., entry through the external gate into the Business A facility was granted based on the keypad entry of a passcode assigned to user "Shantel Cheeks" for "Unit B308." Then, at approximately 6:36 p.m., departure through the external gate was granted based on the keypad entry of the same passcode.

40.     On the evening of June 11, 2025, law enforcement was in the vicinity of the ROBINSON Storage Unit when a male suspect (Individual D) accessed the unit. While Individual D was inside the unit, law enforcement announced its presence and Individual D attempted to flee from law enforcement. Law enforcement arrested Individual D, who left open the door to the ROBINSON Storage Unit. According to law enforcement who could look inside the ROBINSON Storage Unit from the hallway, law enforcement could not observe any drugs, firearms, or bulk cash in plain view. Law enforcement could observe, however, other containers within the ROBINSON Storage Unit capable of concealing such items.

41.     Later that same evening, on June 11, 2025, at approximately 11:41 p.m., law enforcement obtained a warrant to search the ROBINSON Storage Unit. *See* 25 M 366. Law enforcement executed the warrant in the early morning hours on June 12, 2025. Pursuant to the warrant, law enforcement seized, among other things, four Glock-style handguns, two packages containing Glock conversion devices, approximately 5 kilograms of powdery substances suspected to be narcotics, and a

16

receipt from the Vitamin Shoppe for purchases made by "Shantel Robinson." A photograph depicting some of the evidence seized is produced below:



**I.**      **On June 12, 2025, Law Enforcement Searched the HOWARD Residence and Arrested HOWARD and ROBINSON**

42.      According to records obtained from the Will County Recorder of Deeds, as of April 17, 2025, HOWARD owned title to the single-family residence located at 21915 Mary Drive in Frankfort, Illinois (the "HOWARD Residence")

43.      In the early morning hours of June 11, 2025, law enforcement conducting surveillance observed a gray Dodge Durango pull into the vicinity of the HOWARD Residence.

44. According to records obtained from United States Customs and Border Protection, ROBINSON was the intended recipient of international parcels to the HOWARD Residence, one of which was scheduled to arrive as recently as June 9, 2025.

45. On June 11, 2025, law enforcement conducting surveillance observed HOWARD exit the front door of the HOWARD Residence at approximately 10:45 p.m. Upon leaving the HOWARD Residence, HOWARD walked towards one of the vehicles occupied by surveilling officers, which drove away as HOWARD approached. HOWARD then walked throughout the neighborhood and appeared to be looking about in a manner consistent with countersurveillance. Law enforcement conducting surveillance lost visual of HOWARD as he disappeared into the surrounding neighborhood.

46. Later that evening, at approximately 11:41 p.m., law enforcement obtained a warrant to search the HOWARD Residence. *See* 25 M 365. Law enforcement executed the warrant on the morning of June 12, 2025, at approximately 7:58 a.m. Prior to executing the search warrant, law enforcement announced their presence in front of the HOWARD Residence. Shortly thereafter, HOWARD and ROBINSON exited the HOWARD Residence together and were detained. HOWARD and ROBINSON were the only individuals to exit the residence prior to execution of the search warrant.

47. Pursuant to the search warrant, law enforcement seized, among other things, more than one dozen firearms, drug manufacturing paraphernalia (a vacuum

sealer), bulk quantities of U.S. currency, and a camera similar in appearance to the covert camera that law enforcement had installed in the Ridgeland Avenue Building. Law enforcement also observed a money counter in the garage, and a wet nylon drawstring bag in the master bathroom sink. A photograph depicting some of the items seized from the HOWARD Residence is reproduced below.



## II.    CONCLUSION

48.    Based on the information set forth in this affidavit, there is probable cause to believe that JAMES HOWARD and SHANTEL ROBINSON did conspire with each other, and with others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]    propanamide),    a    Schedule    II

Controlled Substance, and 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT.

RYAN PARKER Digitally signed by RYAN PARKER
Date: 2025.06.13 07:03:26 -05'00'

RYAN PARKER
Special Agent, Drug Enforcement
Administration

SWORN TO AND AFFIRMED by telephone June 13, 2025.

Honorable GABRIEL A. FUENTES
United States Magistrate Judge